UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFOR NIA

COREY SULLIVAN,

    Plaintiff,

v.

JEFF MACOMBER, et al.,

    Defendants.

No. 2:16-cv-0526 DB P

ORDER

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief under 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On October 19, 2017, the court ordered plaintiff to file a first amended complaint. (ECF No. 12). Plaintiff filed the amended complaint on November 13, 2017. (ECF No. 13). The court screens it herein.

**I.  SCREENING REQUIREMENT**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal is frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

## II. PLEADING STANDARD

### A. Generally

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### B. Linkage Requirement

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights. Hafer v. Melo, 473 U.S. 159, 166 (1985); see Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See, e.g., Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996) (citing to Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

////

////

### III. DISCUSSION

#### A. Deprivation of Liberty and Property Interests

##### 1. Plaintiff's Claims

Plaintiff contends that the Due Process Clause and the Fifth and Fourteenth Amendments "prohibit the government from depriving an inmate of life, liberty, or property without due process of law." (See ECF No. 13 at 3, 7). He asserts that there are prison regulations that entitle him to participate in a variety of activities and programs and that also afford him access to a number of resources and opportunities. (See id. at 3-4). He further contends that he was "deprive[d] of liberty" when a host of activities, privileges and credits were taken away from him due to his wrongful and/or unlawful placement in administrative segregation ("ad seg") after an incident that occurred between him and other correctional officers.[1] (See id. at 3-4) (brackets added).

##### 2. Applicable Law

The Constitution does not confer upon inmates a liberty interest in avoiding the more adverse conditions of confinement. Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)); Hewitt v. Helms, 459 U.S. 460 466-68 (1983), receded from on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Typically, administrative segregation in and of itself does not implicate a protected liberty interest. Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing Sandin, 515 U.S. at 486 as example). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin, 515 U.S.

---

[1] Plaintiff also appears to contest the propriety of the prison's administrative determination that he was guilty of battery on a peace officer as well as the resulting ad seg punishment. Specifically, he states that he was formally charged with this crime in a court of law, but the case was eventually dismissed. (See ECF No. 13 at 3-6). Despite this fact, however, a "falsified (RVR) rule[s] violation report" was written up on him, and as a result, he was wrongfully punished for the altercation by being placed in ad seg and having his standard prison privileges curtailed. (See ECF No. 13 at 3-4) (brackets added). He contends that because of his wrongful and/or unlawful in-prison conviction and punishment, he has experienced both physical and mental harm. (See generally ECF No. 13 at 3-4).

at 485.  Indeed, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."  Id. (brackets added). As a result, "the hardship associated with administrative segregation, such as a loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, does not violate the due process clause because there is no liberty interest in remaining in the general population."  Anderson v. Kern, 45 F.3d 1310, 1315 (9th Cir. 1995).

Conversely, a state may create liberty interests that are protected by the Due Process Clause.  See Hewitt, 459 U.S. at 466 (stating liberty interests protected by Fourteenth Amendment may arise from Due Process Clause and laws of the States); see, e.g., Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974).  State-created liberty interests are generally limited to freedom from restraint that either "inevitably affect[s] the duration" of a prisoner's sentence, or imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Sandin, 515 U.S. at 483-84, 487; see also Serrano, 345 F.3d at 1078 (quoting Sandin).  "If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Sandin, 515 U.S. at 484 and Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)).

To establish whether a prison hardship is atypical and significant, the court relies upon a condition or combination of conditions that requires case-by-case, fact-by-fact consideration. Keenan, 83 F.3d at 1089.  In Ramirez, the Ninth Circuit determined that the Sandin Court had identified the factors to consider as follows:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

Ramirez, 334 F.3d at 861 (citing Sandin, 515 U.S. at 486-87 and Keenan, 83 F.3d at 1089) (quotation marks in original).

### 3. Analysis

#### a. Plaintiff's Placement in Administrative Segregation

In light of the above, as presented, this is not a cognizable claim. First, the placement of a prisoner into administrative segregation in and unto itself does not implicate a protected liberty interest. See Serrano, 345 F.3d at 1078; see also Wilkinson, 545 U.S. at 221. Indeed, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point during their incarceration. Hewitt, 459 U.S. at 468. Thus, the imposition of it, on its face, does not impose an atypical or significant hardship within the meaning of Sandin. See Sivak v. Mutch, 67 F.3d 308 (9th Cir. 1995) (citing Hewitt).

Moreover, even if plaintiff can establish that he has a state-created liberty interest in not being placed in administrative segregation, plaintiff has not shown that his placement in ad seg affected the duration of his sentence or that it imposed an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 483-84, 487; see also Serrano, 345 F.3d at 1078 (quoting Sandin).

Plaintiff does write of "unsafe conditions" while in ad seg and states that as a result of his placement there, he "suffered extreme emotional distress," had "severe headaches," and that he contemplated suicide. (See ECF No. 13 at 4, 7). However, plaintiff provides no specific information about the segregation itself that allows the court to conclude that it was atypical or that it constituted a significant hardship. See Sandin, 515 U.S. at 483-84, 487. Conclusory allegations unsupported by any underlying factual details are insufficient to state a claim for relief under 42 U.S.C. § 1983. Finley v. Rittenhouse, 416 F.2d 1186 (9th Cir. 1969) (citing Lee v. Wilson, 363 F.2d 824 (9th Cir. 1966)).

Moreover, plaintiff's physiological response to being placed in ad seg is of minimal import in this particular due process analysis. When determining whether an action constituted atypical and significant hardship, the factors to consider pursuant to Sandin are objective. Specifically, the court is to consider whether the conditions plaintiff experienced mirrored those of other ad seg inmates, not whether plaintiff's subjective reaction to the placement was similar to that of other inmates. See, e.g., Sandin, 515 U.S. at 486 (finding no "dramatic departure" from

basic conditions of plaintiff's indeterminate sentence); see also Quach v. Appleberry, No. 2:08-cv-0664 HWG SOM, 2009 WL 1759635, at *5 (E.D. Cal. June 22, 2009) (citing to Sandin). For these reasons, this claim is not cognizable.

### b. Prison's Withholding of College Programming

Because plaintiff has no liberty interest in remaining in the general population, plaintiff's loss of educational opportunities because he was transferred to ad seg does not violate his due process rights, either. See Anderson, 45 F.3d at 1315; see generally Toney v. Owens, 770 F3d 330, 342 (5th Cir. 2015) (stating access to educational programs is not a liberty interest).

Moreover, even if plaintiff could overcome the aforementioned hurdles to establish that he had a state-created liberty interest in participating in the prison's college program while in ad seg, he has not shown that his placement in ad seg and the subsequent education-related deprivation that stemmed from it either: (1) affected the duration of his sentence, or (2) was an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." See Sandin, 515 U.S. at 483-84, 487.

Plaintiff states that he was "[taken] out of college upon segregation" and that he was "removed from the proctor list for two semesters" by the college coordinator. (See ECF No. 13 at 5). While two semesters may be a significant amount of time lost, plaintiff has not alleged that depriving prisoners of college programming while in ad seg does not ever happen, nor has plaintiff alleged that his period of deprivation extended beyond what was normal and/or beyond the period he was in ad seg. (See generally ECF No. 13). Plaintiff does not allege that that the prison's discontinuation of plaintiff's college programming affected the length of his prison sentence, either. See Sandin, 515 U.S. at 483-84, 487. He simply states that while he was in ad seg, he was taken out of the prison's college programming while other prisoners that were in ad seg with him were not.[2] (See ECF No. 13 at 5). Without more, plaintiff's removal from college programming while in ad seg does not appear to have been an atypical and significant hardship on

////

---

[2] To the extent that plaintiff also raises an equal protection argument with these facts, the court addresses it, infra.

6

plaintiff in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84. Therefore, the claim is not cognizable.

### B. Deliberate Indifference and Cruel and Unusual Punishment

#### 1. Plaintiff's Claims

Plaintiff contends that "unsafe conditions, atypical and significant hardship, [and the] falsification of records/documents violated [his] rights and constituted cruel and unusual punishment, a due process violation under the Eighth, [First], Fourteenth and Fifth Amendment[s] to the United States Constitution." (ECF No. 13 at 7) (brackets added). Overall, the pleading is somewhat convoluted. (See generally id.).

However, after reviewing it in its entirety, it appears plaintiff is attempting to argue that the falsification of a rules violation report, which resulted in his placement in ad seg as punishment, led to his emotional harm which ultimately constituted deliberate indifference and cruel and unusual punishment. He writes:

> As a result of this falsified charge and the related consequences, [I have] suffered extreme emotional distress, severe headaches, contemplation of suicide, and loss of appetite. Plus [sic] depression, anger, anxiety, feeling of violence [sic] and losing control, hopelessness, that I had to take psychotropic medication for. Also due to the falsified charge it lead [sic] me to receiving [sic] a lock up order that sent me to administrative segregation that was signed by the correctional lieutenants and the warden as if the allege[d] allegation was true.

(ECF No. 13 at 4) (brackets added).

#### 2. Applicable Law

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison

official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Then he must fail to take reasonable measures to abate the substantial risk of serious harm. Id. at 847. Mere negligent failure to protect an inmate from harm is not actionable under § 1983. See id. at 835.

The Eighth Amendment standards for conditions in disciplinary housing are the same as those in the general population. Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir 1982), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). The objective component of the standard is satisfied so long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety." Hoptowit, 682 F.2d at 1246; Farmer, 511 U.S. at 832; Wright v. Rushen, 642 F.2d 1129, 1132-33 (9th Cir. 1981). Under the subjective component of the standard, deliberate indifference requires a showing that the prison official "knows of and disregards and excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. A prison official is deliberately indifferent only if he knows that a prisoner faces a substantial risk of serious harm and disregards it by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837. Delay in treatment must cause substantial harm. See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

### 3. Analysis

This claim, as presented, is also not cognizable for the following reasons. First, plaintiff fails to state with specificity what the "unsafe conditions" and "atypical and significant hardship[s]" were that he experienced at the hands of prison officials, nor does he describe their level of severity. In other words, plaintiff fails to show that the conditions he experienced while in administrative segregation resulted in plaintiff being denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834.

Second, plaintiff fails to identify the prison employees who harmed him and provide factual support that they had sufficiently culpable states of mind when they did. See generally id. Finally, plaintiff fails to show that defendants knew the conditions in ad seg were unsafe and that they disregarded the associated risks. See generally Farmer, 511 U.S. at 837. For these reasons, plaintiff has not made a threshold showing to support his deliberate indifference and/or cruel and unusual punishment claims.

### C. Denial of Equal Protection

#### 1. Plaintiff's Claim

Plaintiff also appears to claim that his rights under the Equal Protection Clause were violated when, unlike other inmates placed in administrative segregation, he was taken out of his college programs. (See ECF No. 13 at 5). On its face, this claim is not cognizable, either.

#### 2. Applicable Law

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. Calif. Dep't of Corrs. and Rehab, 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against plaintiff based on his membership in a protected class. Hartmann, 707 F.3d at 1123. It may also be established by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 601-602 (2008). Finally, an equal protection claim may exist where a policy that is neutral on its face has a disproportionate, or "disparate," impact on an identifiable group. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977). At the same time, however, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Shakur, 514 F.3d at 884 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

////

////

### 3. Analysis

Plaintiff does not allege that he is part of a protected class and that he was treated differently because of his membership in said class. (See generally ECF No. 13 at 5-6). Moreover, as a group, prisoners are not a suspect class. See Rodriguez v. Cook, 169 F.3d 1176, 1179 (9th Cir. 1999) (citing Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998)). Plaintiff is not claiming that neutral prison policies regarding the withholding of college programming to inmates in ad seg had a disproportionate impact on an identifiable group of which he is a part, either. (See generally ECF No. 13 at 5-6). Instead, plaintiff states that while ad seg, he was taken out of his college courses and that other ad seg inmates were not. (See id. at 5). In other words, plaintiff alleges that he was treated differently than the other inmates who were in ad seg when he was there. As a result, to state a cognizable claim, plaintiff would need to show that the different treatment he experienced was not "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

Plaintiff states that he was placed in ad seg after the prison found him guilty of the "falsified charge" of battery on a peace officer. (See ECF No. 13 at 3-4). Thus, the reason why plaintiff was placed there appears to have been – at least in part – a prison safety issue. With respect to inmate management, legitimate government goals include effective management of the jail and maintenance of internal jail security and order. See White v. Roper, 901 F.2d 1501, 1504 (9th Cir. 1990). Plaintiff has not shown that prison officials depriving him of participation in college coursework while in administrative segregation, did not serve one of these purposes.[3] Thus, on its face, it appears that depriving plaintiff of participation in college programming while in ad seg was rationally related to a legitimate penological interest. See Turner, 482 U.S. at 89-90. For these reasons, plaintiff's equal protection claim is not cognizable.

////

////

---

[3] For example, given that the prison administration found plaintiff guilty of battery of a peace officer, prison officials could have reasonably felt that allowing plaintiff to participate in college programming – and any resulting interaction with others that doing so might have involved – would have made officers and/or inmates susceptible to additional violence.

**D.  Denial of Procedural Due Process**

   **1. Plaintiff's Claim**

Plaintiff also appears to be arguing that his procedural due process rights were violated when he was deprived of prison amenities.  (See ECF No. 13 at 7).  He writes:

> The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty, or property without due process of law.  A violation of procedural due process requires:  (1) that the state has interfered with the inmate['s] protected liberty or property interest, and (2) that procedural safeguards were constitutionally insufficient to protect against unjustified deprivations.

(ECF No. 13 at 7).  This claim is without merit.

   **2. Applicable Law**

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  Thereafter, the prisoner must establish that the prison failed to meet the minimal procedural requirements before depriving him of that interest. Wolff, 418 U.S. at 556.  In the prison disciplinary context, the minimum procedural requirements that satisfy due process are as follows:  (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals, and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.

   **3. Analysis**

As previously stated herein, plaintiff does not have a liberty interest in not being placed in administrative segregation, nor does he have a liberty interest in the activities and resources of which he was deprived as a result of being placed in administrative segregation.  See Serrano, 345 F.3d at 1078 (citing Sandin, 515 U.S. at 486 as example).  Because plaintiff does not meet the

11

liberty and/or property interest threshold requirement, the court does not reach the substantive question of whether the process of placing plaintiff in administrative segregation – even if wrongfully so – deprived him of procedural due process.

Even if plaintiff could establish that he possessed these protected interests, plaintiff does not claim that he was deprived of them without first having some sort of procedural process, nor does he question the mechanics of those proceedings. He simply questions the outcome of them, namely the finding of his guilt.

Moreover, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22 (1986) (brackets added) (internal quotation marks omitted) (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

To the extent that this claim challenges the legitimacy of the proceedings that ultimately led to plaintiff's placement in administrative segregation, specifically, that he was wrongfully found guilty of violating prison rules because defendant Pizzaro, a correctional officer, falsified a rules violation report[4] (see ECF No. 13 at 4-5), although the Due Process Clause guarantees certain procedural protections to defend against false accusations, it does not contain any language that grants a broad right to be free from false accusations. See Freedman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986); see Jones v. Woodward, No. 1:14-cv-2084 SAB P, 2015WL 1014257, *2 (E.D. Cal. Mar. 6, 2015) (stating fact that prisoner may have been innocent of disciplinary charges does not raise due process issue).

Furthermore, prisoners do not have a due process right that entitles them to a specific grievance process, either. See Ramirez, 334 F.3d at 860 (holding there is no liberty interest entitling inmates to a specific grievance process); see also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (stating there is no legitimate claim of entitlement to grievance procedure).

---

[4] Plaintiff contends that defendant Pizzaro "knowingly and deliberately [wrote up] a falsified . . . rule violation report against [him] which he later recanted" during sworn testimony at the related criminal preliminary hearing in Sacramento Superior Court. (See ECF No. 13 at 4) (brackets added).

For these reasons, this claim is not cognizable.

**IV.    OPPORTUNITY TO AMEND COMPLAINT**

If plaintiff wishes to continue with this action, he must file an amended complaint that addresses the problems with his complaint that are explained above. This will be plaintiff's final opportunity to amend the complaint. Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. If plaintiff wishes to add a claim, he must include it in the body of the complaint. The charging allegations must be set forth in the amended complaint so defendants have fair notice of the claims plaintiff is presenting. That said, plaintiff need not provide every detailed fact in support of his claims. Rather, plaintiff should provide a short, plain statement of each claim. See Fed. R. Civ. P. 8(a).

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation).

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema

N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.

An amended complaint must be complete in itself without reference to any prior pleading. E.D. Cal. R. 220. Once plaintiff files an amended complaint, the original pleading is superseded. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint (ECF No. 13) is dismissed with leave to amend, and

2. Plaintiff is granted thirty days from the date of service of this order to file an amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must bear the docket number assigned to this case and must be labeled "Second Amended Complaint." Plaintiff must file an original and two copies of the amended complaint. Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed for failure to comply with a court order.

3. The Clerk of the Court is directed to provide plaintiff a copy of the prisoner complaint form used in this district.

Dated: January 8, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.CIVIL RIGHTS/sull0526.scrn.fac